COMPANIA ANONIMA VENEZOLANA
DE NAVEGACION

v.

The COTTMAN COMPANY
and
Liberty Mutual Insurance Company.

Civ. No. 8640.

United States District Court
D. Maryland, Civil Division.

Nov. 23, 1956.

Randall C. Coleman, Jr., Baltimore, Md., for plaintiff.

J. Paul Bright, Jr., Baltimore, Md., for Cottman Co.

J. Nicholas Shriver, Jr., Baltimore, Md., for Liberty Mut. Ins. Co.

THOMSEN, Chief Judge.

This action raises the following issues, among others: (1) whether an indemnity agreement between Isbrandtsen Company, Inc., a shipping company, and defendant Cottman Company, a stevedoring company, should be construed to require Cottman not only to indemnify Isbrandtsen against the claims specified in the agreement, but also to indemnify ship owners for whom Isbrandtsen is acting as agent; and (2) whether an endorsement attached to a Comprehensive General Liability Policy issued by defendant Liberty Mutual Insurance Company to Cottman extends any coverage to plaintiff.

At the request of all parties, the court ordered a separate preliminary trial of those two issues. Rule 42(b), Fed.Rules Civ.Proc., 28 U.S.C.A.

Findings of Fact

Isbrandtsen owns, charters and operates vessels itself, and also acts as agent for certain ship owners and charter owners, including plaintiff, a Venezuelan corporation, which owns and operates the S.S. Falcon. Cottman performs stevedoring services for various shipping companies. Before March 3, 1953, there was no written contract between Cottman and Isbrandtsen, but Cottman had been performing stevedoring services for Isbrandtsen. On that date Cottman wrote Isbrandtsen a letter stating:[1]

"The increase in wages which was granted to Longshorement (sic), retroactive to October 1, 1952, has compelled us to adjust the stevedor-

---

1. Immaterial portions of all documents are omitted.

ing rates of this port by about 7½%."

On March 21, 1953, Isbrandtsen replied, confirming the adjusted rates, and adding:

"Final approval pending until a new contract covering stevedoring operations at Baltimore can be submitted. Inserted in the contract must be the company's standard clause reading as follows:

" 'The Contractor will indemnify and hold harmless and defend Isbrandtsen Company, Inc., as owner or charterer of any vessel owned or chartered by it or as agent for any vessel and ship-owners or charter-owners for whom Isbrandtsen Company, Inc., is acting as agent, against any and all claims or demands arising out of bodily injury (including death at any time resulting therefrom) occurring on or about piers or other premises utilized by Isbrandtsen Company, Inc., or on any vessel owned or chartered by Isbrandtsen Company, Inc., or for which Isbandtsen Company, Inc., is acting as agent, which claims are made by or on behalf of (i) any employee of the Contractor, or (ii) any other person provided that such injury or death of such other person shall have been in any way connected with the Contractor's operations (excluding members of the ship's personnel who have signed or are about to sign shipping articles for the voyage).'

"We shall appreciate receiving at your earliest convenience contract drawn up as outlined above. In the interim period, it will be in order to bill us in accordance with adjusted rates."

On April 15, 1953, Cottman wrote Isbrandtsen, referring to the letter of March 3d, confirming and setting out the adjusted stevedoring rates, and stating:

"In accordance with your request of March 21st, we have had our insurance company endorse our policy as stipulated in your letter, and for your information, enclose copy of the endorsement." [2]

The endorsement referred to was attached to a Comprehensive General Liability Policy which had been issued to Cottman by Liberty. A similar endorsement was attached to the renewal policy issued by Liberty to Cottman on July 1, 1953.

It read as follows:

"INCLUSION OF CONTRACTUAL LIABILITY ARISING FROM A SPECIFIED UNDERTAKING

"It is agreed that such insurance as is afforded by the policy with respect to liability assumed by the insured under contract applies also to that part of a contract between the named insured and Isbrandtsen Company, Inc.

"dated Not Stated , reading:
  *See Schedule Attached.

"Rates-Per $100 of Payroll Coverage A 1.580

"Premium (To be adjusted on audit)"

Attached was a paper headed "Extension Schedule for Endorsement Serial Number 1". Then followed verbatim the clause set out in Isbrandtsen's letter to Cottman dated March 21, 1953, quoted above.

The policy issued by Liberty to Cottman contained three other endorsements, dealing with operations performed by Cottman for three other shipping companies. Two of these endorsements made a specified shipping company an additional insured under the policy; one of them covered the contractual liability assumed by Cottman to a specified company; all three of them differed in form and in substance from the endorsement involved in this case.

On April 3, 1954, Cottman was engaged in loading cargo on board the S. S. Falcon, under an oral agreement with

---

2. No formal contract between Cottman and Isbrandtsen was executed during the period material in this case.

Isbrandtsen, as agent for the plaintiff. During the course of the work Michael Santoro, an employee of Cottman, was injured, and made claim against plaintiff for indemnity damages. Plaintiff advised Cottman and Liberty of the claim, and requested them to take over the defense. When they refused, plaintiff settled Santoro's claim for $7,766.25, and brought this action against Cottman and Liberty, claiming that it is entitled to the benefit of the indemnity clause set out above.

Defendants contend that neither the indemnity agreement made by Cottman, nor the policy endorsement embodying that agreement, gives any right of action to plaintiff against either Cottman or Liberty, but that the obligation of Cottman runs to Isbrandtsen alone, and the obligation of Liberty runs only to Cottman.

Each of the parties moved for a summary judgment in its favor. I refused the motions, stating that I wished as much information as possible about the course of dealing between the various parties, and the custom in this port or along the Atlantic seaboard, if such a general custom exists, relevant to the matter in issue. Neither side has offered any such evidence.

### Discussion

The indemnity clause was prepared by Isbrandtsen, and not by either Cottman or Liberty. Under Maryland, New York, and Federal law, therefore, any ambiguities or doubts as to the proper construction of the clause should be resolved against Isbrandtsen and those claiming under Isbrandtsen.

The clause reads: "The Contractor will indemnify and hold harmless and defend Isbrandtsen Company, Inc., as owner or charterer of any vessel owned or chartered by it or as agent for any vessel and ship-owners or charter-owners for whom Isbrandtsen Company, Inc., is acting as agent, against all claims * * *." Defendants contend that the contractor, Cottman, agrees to indemnify Isbrandtsen and no one else; that the rest of the language just quoted describes the capacities in which Isbrandtsen must be acting to be entitled to the indemnity, i.e.: "(A) as owner or charterer of any vessel owned or chartered by it or (B) as agent for any vessel and ship owners or charter owners for whom Isbrandtsen Company, Inc., is acting as agent." Plaintiff, on the other hand, contends that the clause should be read as follows: "The Contractor will indemnify and hold harmless and defend (1) Isbrandtsen Company, Inc., as owner or charterer of any vessel owned or chartered by it or as agent for any vessel and (2) ship-owners or charter-owners for whom Isbrandtsen Company, Inc., is acting as agent."

Grammatically, there is little to choose between the two contentions. What little is there, in my opinion, weighs in favor of plaintiff; but not enough to enable me to find that the agreement is unambiguous or that there is no doubt about its proper construction.

Practically, Isbrandtsen might incur liability for its own negligence not only when it is acting as ship owner or charter owner itself, but also when it is acting as agent for vessels, ship owners and charter owners. For example, it might fail to report to the stevedores dangerous conditions of which it had been notified or was otherwise aware.

The other endorsements attached to the policy issued by Liberty to Cottman extend coverage to individual companies, or insure obligations assumed by Cottman to individual companies; so far as any inference can be drawn from them, the inference is that it is not customary for a stevedore or its insurer to assume indemnity obligations to all persons, firms or corporations who may be responsible for an accident, but only to specified firms or corporations. Plaintiff did not offer any evidence to rebut this inference.

Liberty's underwriter testified that it is customary for insurers to charge higher rates for contractual liability coverage where there is more than one indemnitee

than when there is only one indemnitee. This is true even where, as here, a ship owner acting as its own agent would have the same obligations that plaintiff and Isbrandtsen combined would have in this case. One reason for a higher rate where there is more than one indemnitee is the greater expense usually incurred in defending more than one defendant.

The rates for contractual liability coverage are not fixed by any manual, but are "judgment" rates. The rates specified in the endorsements attached to the 1953 policy were the same for each endorsement, an "average" rate fixed by the underwriter after considering all the factors. The rates in the various endorsements attached to the 1952 policy differed from one another, but for reasons which are not material to the questions involved in this case.

Ship owners and charter owners customarily carry liability insurance to protect them against such claims as are referred to in the indemnity clause which is the subject of the instant case. There is no explanation in the record why ship owners such as Isbrandtsen and the companies named in the other three endorsements wanted an indemnity agreement from Cottman or its insurer, and certainly no explanation why Isbrandtsen might have wanted indemnity for anyone but itself.

If Isbrandtsen wished Cottman or Cottman's insurer to assume liability to other ship owners or charter owners, it should have said so clearly. The language of the clause is ambiguous, and since it was drawn by Isbrandtsen, and not by Cottman or Liberty, that ambiguity must be resolved against Isbrandtsen and against plaintiff, which is claiming under Isbrandtsen.

By the endorsement to its policy referred to above, Liberty did not make Isbrandtsen or anyone else an additional insured, but only agreed to indemnify Cottman against the contractual liability assumed by Cottman.

## Conclusion

Neither Cottman nor Liberty undertook to indemnify plaintiff against the claim of Santoro.

The clerk is ordered to enter judgment for the defendants.